**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DARREN McINTYRE, | : | CIVIL ACTION NO. **3:CV-10-1739** |
| Petitioner | : | (Judge Munley) |
| v. | : | (Magistrate Judge Blewitt) |
| D. EBBERT, Warden, | : | |
| Respondent | : | |

## REPORT AND RECOMMENDATION

**I. Procedural Background.**

Petitioner, Darren McIntyre, filed a Petition for Writ of Habeas Corpus on August 19, 2010, pursuant to 28 U.S.C. § 2241. (Doc. 1). The Petitioner, proceeding *pro se*, names as Respondent D. Ebbert, Warden of Federal Correctional Institution in Allenwood, Pennsylvania ("FCI-Allenwood"), where the Petitioner is currently confined. (Doc. 1). Petitioner essentially challenges the decision by the United States Parole Commission ("USPC" or "Commission") which departed from the guidelines for District of Columbia offenders and denied the Petitioner parole.[1] (Doc. 1). The Petitioner paid the filing fee. (Doc. 7).

---

[1]Pursuant to the National Capital Revitalization and Self-Government Improvement Act of 1997, Public Law. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-141 (formerly 24-1231), the United States Parole Commission has jurisdiction to make parole decisions for D.C. Code offenders. As this Court noted in *Reynolds v. Williamson*, 2005 WL 3050154 (M.D. Pa.) * 1, n. 1:

> On August 5, 1998, "the jurisdiction and authority of the Board of Parole of the District of Columbia to grant and deny parole, and to impose conditions upon an order of parole, in the case of any imprisoned felon who is eligible for parole or reparole under the District of Columbia Code" was transferred to the Commission. National Capital Revitalization and Self-Government Improvement Act of 1997, ("Revitalization Act"), Pub.L. No. 105-33, § 11231(a)(1), 111 Stat.

The Court issued an Order to Show Cause on September 10, 2010, and directed the Respondent to answer to the Petition. (Doc. 8). On September 30, 2010, the Respondent filed a Response to the Petition with attached exhibits. (Doc. 11). On October 14, 2010, the Petitioner filed a Traverse and on the following day, the Petitioner filed an exhibit. (Docs. 12 and 13).

For the reasons set forth below, it is recommended that the petition for habeas corpus be denied.

## II. Statement of Case.

On February 12, 1999, the Petitioner was sentenced by the District of Columbia Superior Court to a 30-year term of imprisonment for aggravated assault. (Doc. 11, Ex. 1). This sentence was imposed to run consecutively to an earlier 1996 non-parolable federal sentence of 57 months for unlawful possession of a firearm by a convicted felon. (Doc. 11, Ex. 1 at 3). On January 1, 2010, the Petitioner became eligible for parole on his D.C. sentence. (Doc. 11, Ex. 1 at 2).

On October 28, 2009, the USPC conducted an initial parole hearing for the Petitioner in anticipation of his upcoming eligibility for release. (Doc. 11, Ex. 2 and Ex. 3). The hearing examiner informed the Petitioner that he would be recommending the Petitioner's case be continued until the Commission could obtain a copy of the Petitioner's offense report. *(Id.)*

---

712, 745.

See also *Fletcher v. Reilly*, 433 F. 3d 867, 872 (D.C. Cir. 2006); *Nelson v. Williamson*, 2007 WL 4592330 (M.D. Pa.).

According to the hearing summary, the hearing examiner was able to obtain the police report and Grand Jury Indictment for the Petitioner's assault conviction. (Doc. 11, Exs. 3, 4 and 5). The hearing examiner summarized the facts surrounding the Petitioner's conviction in the hearing summary. (Doc. 11, Ex. 3). The hearing examiner noted that the Petitioner is a reputed member of the Stanton Terrace Crew, a rival of the Parkland Crew. (*Id.*) The hearing examiner stated that the Petitioner's indictment indicates that between March 20, 1995 and December 13, 1995, members of the Stanton Terrace Crew, including the Petitioner, conspired to murder members of the Parkland Crew, who were viewed as competitor crack cocaine dealers, in order to seek revenge for the killing of a former member of the Stanton Terrace Crew. (Doc. 11, Exs. 3 and 5).

The two crews were involved in a feud and police responded to shootings on three separate occasions in which the Petitioner was present. (Doc. 11, Ex. 3-5). On May 11, 1995, members of the Stanton Terrace Crew, including the Petitioner, went to the Savannah Terrace to commit murder upon James Dawkins, an associate of the Parkland Crew. (*Id*.) This shooting resulted in three bystanders, two women and a four year old child, being shot and wounded. (*Id*.) On May 13, 1995, members of the Stanton Terrace Crew shot and killed William Zimmerman, a member of the Parkland Crew. (*Id*.) On May 14, 1995, members of the Stanton Terrace Crew shot and killed Michael Thompson during an attempt to kill members and associates of the Parkland Crew. (*Id*.)

The Petitioner was indicted on 12 counts and subsequently pled guilty to three counts of Aggravated Assault. (Doc. 11, Ex. 3 at 4-5). He admitted his involvement in the May 11, 1995

3

shootings, noting that three people were shot, but no one was killed. (Doc. 11, Ex. 3 at 5-6).

The hearing examiner noted that the Petitioner's statements at the parole hearing were different than the information in the official version of events. (Doc. 11, Ex. 3 at 5-6).

On December 14, 2009, the Petitioner was informed that his case was remanded for a new hearing to consider information contained in the police report dated March 23, 1998 and the Grand Jury indictment. (Doc. 11, Exs. 4 and 5).

At the remand parole hearing on January 28, 2010, the Petitioner admitted he was present for the murders alleged in the indictment, and for the shooting of the two women and child, but he claimed he was firing in a different direction. (Doc. 11, Ex. 7). The Petitioner admitted being present for various shootings but denied being an active participant. (*Id*.) Thus, the hearing examiner considered the Petitioner unsuitable for parole release and recommended denial of parole at the remand hearing. *Id*.

The Executive Reviewer concurred with the hearing examiner and the Commission adopted the recommendation to deny the Petitioner's parole, regardless of the fact that the Petitioner's total point score pursuant to the 1987 guidelines of the D.C. Board of Parole indicated that parole should be granted. *(Id.)*

The Commission outlined numerous reasons for which the Petitioner's parole was denied, in departure from the 1987 guidelines, concluding that there was a reasonable probability that the Petitioner would not obey the law if he were to be released and that he would pose a danger to public safety. (Doc. 11, Ex. 8). The Commission stated that the Petitioner was a more serious parole risk than shown by his point score because his offense

conduct involved ongoing criminal behavior involving violence, drug distribution and possession of weapons. (*Id.*) The Commission cited the fact that the Petitioner was a member of the Stanton Street Crew and that he was involved in a shooting of a rival crew member where three innocent victims, including a four year old child, were shot. (*Id.*) Moreover, the Commission noted that within days of that shooting, the Petitioner was present when two other men were murdered in connection with the gang related feud. (*Id.*)

The Commission also noted that material recovered from the Petitioner's residence at the time of his arrest included a sawed-off shotgun, ammunition of various calibers, two digital scales and a handwritten diary describing violent crimes. (*Id.*) Furthermore, a videotape was recovered where the Petitioner was depicted demonstrating how to use a sawed-off shotgun and his four year old son was seen mimicking use of a gun. (*Id.*)

The Commission stated that the Petitioner had made positive improvements while in prison, but that the ongoing criminal behavior that the Petitioner was a part of indicated that he remained a risk to release on parole. (*Id.*)

The decision of the Commission was not administratively appealable. Though the Petitioner requested that the Commission reopen his case, the Commission determined that reopening was not warranted. (Doc. 11, Ex. 9 and 10).

**III. Claims of Habeas Petition.**

In his habeas petition, the Petitioner argues that he is being denied his right of due process and equal protection under the law, and that the USPC had no rational basis to depart from the 1987 D.C. Parole guidelines in denying him parole. (Docs. 1 and 12).

The Respondent argues that there is a rational basis in the record to support the Commission's findings and decision to deny the Petitioner parole. (Doc. 11).

**IV. Discussion.**

The Petitioner is being considered for parole release pursuant to D.C. Parole Statute, DC Code §24-204, which states:

> Whenever it shall appear to the Board of Parole that there is reasonable probability that a prisoner will live and remain at liberty without violating the law, that his release is not incompatible with the welfare of society, and that he has served the minimum sentence imposed or the prescribed portion of his sentence, as the case may be, the Board may authorize his release on parole upon such terms and conditions as the Board shall from time to time prescribe.

The Court in *Hurt v. Holenick*, 2005 WL 1653175, * 5 (M.D. Pa.), stated that the Court's standard of review regarding a habeas petition challenging a USPC's parole decision is limited to "whether there is a rational basis in the record for the Commission's conclusions." *See also Furnari v. Warden, Allenwood Federal Correctional Institution,* 218 F.3d 250 (3d Cir. 2000) (stating that on a review of a decision by the Parole Commission on an application of writ of habeas corpus, the inquiry is whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons).

As the Court stated in *Nelson v. Williamson*, 2007 WL 4592330, *3 (M.D. Pa.):

> The function of judicial review on a petition for writ of habeas corpus in the parole context is to determine whether the Commission abused its discretion. *Furnari v. Warden,* 218 F.3d 250, 254 (3d Cir. 2000). Review is limited to whether there is a rational basis in the record for the conclusions embodied in the Parole Commission's statement of reasons, which should include whether the criteria, appropriate, rational and consistent with its enabling statutes, has been followed so that its decision is not arbitrary and capricious, nor based on impermissible considerations. *Id*. (citing

6

> *Zannino v. Arnold,* 531 F.2d 687, 690-91 (3d Cir.1976)). The court
> is not empowered to substitute its judgment for that of the
> Parole Commission unless the Commission's exercise of discretion
> represents an egregious departure from rational decision-making. *See
> Butler v. U.S. Parole Commission,* 570 F.Supp. 67, 77 (M.D. Pa.1983).

The Petitioner argues that the USPC acted beyond its authority and abused its discretion by incorrectly applying the 1987 D.C. Parole guidelines when it denied him parole even though he had a low point score. (Docs. 1, 12). In 1987, the D.C. Board published guidelines to utilize when deciding whether to award parole but the Board retained discretion to grant or deny parole notwithstanding the result recommended by the guidelines. *See Ellis v. District of Columbia*, 84 F.3d 1413, 1416 (D.C. Cir. 1996) ("Under the regulations, a prisoner with a low total point score shall be granted parole unless the Board, in the exercise of its discretion, believes there is some other reason for not granting him parole.").

In 1998, pursuant to its "amend and supplement" authority, the Commission adopted an expanded verison of the total point score system ("TPS") under the 1987 D.C. Parole guidelines to determine whether an inmate should be paroled or held in prison for rehearing. The Court in *Puifory v. Reilly,* 2009 WL 839354 *2-4 (M.D. Pa. 2009), outlined the changes in the guidelines as follows:

> This revised scoring system calculated a Salient Factor Score ("SFS") for purposes
> of determining the risk of recidivism. The SFS was then used in formulating the
> inmate's Base Point Score ("BPS"), which took into consideration not only the risk
> of recidivism as indicated by the SFS, but also such matters as current or prior
> violence and death of the victim, i.e., accountability for the crime itself. See
> Reynolds v. Williamson, No. 3:04-CV-2396, 2005 WL 3050154, at *1 (M.D.Pa.
> Nov.14, 2005) (Nealon, J.). Finally, the BPS was adjusted according to an inmate's
> institutional record to arrive at the TPS.FN5 Ultimately, the TPS was the numerical
> guideline by which parole was suggested or discouraged, though the action

recommended by the TPS remained subject to the Commission's discretion. If parole was denied, the Commission used the BPS to formulate specific rehearing guideline ranges that replaced the Board's rehearing guideline.

> FN5. Points were subtracted from an inmate's BPS for program achievement while incarcerated, or added for incidents requiring disciplinary action. The number produced by these additions and subtractions from the BPS was the TPS.

The Commission's parole guidelines underwent further revisions effective December 4, 2000. See 28 C.F.R. § 2.80 (2001), originally published at 65 Fed.Reg. 70663 (Nov. 27, 2000). As explained in the Summary of the Final Rule published in the Federal Register:

The revised version of § 2.80 eliminates the Total Point Score from the Point Assignment Table (i.e., the system of adding or subtracting points for post-incarceration factors), and eliminates the system of determining at each hearing (based on the Total Point Score) whether the inmate qualifies for parole at that time. It substitutes the following decision making procedure. Under Step 1, a Base Guideline Range is determined from the Base Point Score. There is no change from the Base Point Score used in § 2.80. The time expected for the inmate to qualify for parole (assuming no disciplinary infractions and ordinary program achievement) is simply made explicit. Under Step 2, the Parole Eligibility Date is recorded. Under Step 3, a Disciplinary Guideline Range is determined (if there are any disciplinary infractions) based on the time ranges prescribed at § 2.36. Under Step 4, a Superior Program Achievement Award (if superior program achievement is found) is determined. The Superior Program Achievement Award is based on the number of months of superior program achievement on the inmate's prison record (i.e., program achievement that would have qualified for a two-point deduction under the current system that this rule will replace). Under Step 5, Base Point Guideline Range, Parole Eligibility Date, Disciplinary Range, and the Superior Program Achievement Award are combined, at the initial hearing, into a Total Guideline Range. This will make clear to the inmate the amount of time he or she may expect to serve with continued good conduct and ordinary program achievement. The impact of superior program achievement as well as disciplinary infractions will also be made clear. Equally importantly, if release within three years is deemed appropriate by the Commission, the inmate can be given a presumptive release date (contingent upon continued good behavior and the development of a satisfactory release plan). Otherwise, the inmate is continued for a rehearing, normally at 36 months, when the granting of a presumptive release date will again be considered. At each rehearing, the Total Guideline Range from the previous hearing is used as the starting point and is

modified by adding the amount, if any, from Step 3 (based on conduct since the last hearing) and subtracting the amount, if any, from Step 4 (based on conduct since the last hearing). The result is the Total Guideline Range to be used at the rehearing.

*4 65 Fed.Reg. 70663-64 (Nov. 27, 2000). The Commission further explained that "the Point Assignment Table remains the basis upon which the guidelines are determined." *Id*. at 70633.

Thus, under the 2000 guidelines, the Commissioner used a point-based system to determine a recommended range of confinement, as opposed to obtaining a recommendation of either parole or deny and schedule another hearing. The Commission made the 2000 guidelines applicable to D.C. Code offenders who received their initial hearings before the Commission, i.e. those offenders, like Plaintiff, whose initial parole hearings occurred on or after August 5, 1998. 28 C.F.R. § 2.80(a) (2003).

Here, the Plaintiff argues that the USPC failed to apply the 1987 guidelines of the D.C. Board when it denied him parole, notwithstanding his point score of 2, which would ordinarily indicate that parole should be granted. However, it is clear that both the D.C. Board and the USPC have the authority to depart from the guidelines. The 1987 D.C. guidelines state:

> The Board may, in unusual circumstances, waive the SFS and the pre and post incarceration factors set forth in this chapter [i.e., depart from the guidelines] to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

D.C. M.R. §204.22. See also *Ellis*, *supra*.

Thus, under D.C. parole rules, the "Board was not required to either grant or deny parole based upon the score attained." *McRae v. Hyman*, 667 A.2d 1356, 1361 (D.C. 1995). The scoring system under the D.C. Parole Regulations was also determined to be a guide, "not a 'rigid formula', and not a constraint on the discretion conferred upon the Board by the parole statute." *Ellis*, 84 F.3d at 1419 (*citing McRae*, 667 A.2d at 1360-1361).

9

The Petitioner also argues that the USPC abused its discretion because there was no rational basis which supported its decision to deny him parole. However, both the hearing examiner and the Commission clearly and thoroughly outlined the supporting reasons for decision to deny the Petitioner parole. (Doc. 11, Exs. 7, 8). As discussed above, the Commission found that the Petitioner was not suitable for parole because his crimes involved a child, his offense involved ongoing criminal behavior, and because it believed Petitioner to be a more serious risk than evident from his point score. (Doc. 11, Ex. 8). The Commission stated that the Petitioner was a more serious parole risk because his ongoing criminal behavior involved violence, drug distribution, and possession of weapons. (*Id*.) The Commission stated that the Petitioner was a gang member and that he was involved in a shooting where three innocent victims including a four year old child were struck. (*Id*.) The Commission noted that within a few days, the Petitioner was present when two other men were murdered in furtherance of illegal activities. (*Id.*) The Commission stated that though it recognized the positive adjustments the Petitioner made in prison, his ongoing activities in the community made him a risk to release on parole at this time. (*Id*.)

Thus, the Commission clearly had a rational basis to deny parole to the Petitioner, and we will recommend that the Petitioner's habeas petition be denied.

**V. Recommendation**.

Based on the foregoing, it is respectfully recommended that the Petition for Writ of Habeas Corpus be denied with respect to all of Petitioner's claims.

                                                **s/ Thomas M. Blewitt**
                                                **THOMAS M. BLEWITT**
                                                **United States Magistrate Judge**

**Dated: December 22, 2010**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN McINTYRE, | : | CIVIL ACTION NO. 3:CV-10-1739 |
| | : | |
| Petitioner | : | (Judge Munley) |
| | : | |
| v. | : | (Magistrate Judge Blewitt) |
| | : | |
| D. EBBERT, Warden, | : | |
| | : | |
| Respondent | : | |

## **NOTICE**

**NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **December 22, 2010.**

Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with

instructions.

                                                    **s/ Thomas M. Blewitt**
                                                    **THOMAS M. BLEWITT**
                                                    **United States Magistrate Judge**

**Dated: December 22, 2010**