IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN MCINTYRE, | : | No. 3:10cv1739 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN D. EBBERT | : | |
| Respondent | : | |

## MEMORANDUM

Before the court is the petitioner's objection to Magistrate Judge Thomas M. Blewitt's recommendation that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied. Having been fully briefed, the matter is ripe for disposition.

## I. BACKGROUND[1]

On February 12, 1999, the Petitioner Darren McIntyre ("Petitioner") was sentenced by the District of Columbia Superior Court to a thirty-year term of imprisonment for aggravated assault. (Doc. 11-2, Ex. 1). This sentence was imposed to run consecutively to an earlier 1996 non-parolable federal sentence of fifty-seven months for unlawful possession of a firearm by a convicted felon. (Doc. 11-2, Ex. 1 at 3). On January 1, 2010, the Petitioner became eligible for parole on his D.C. sentence. (Doc. 11-2, Ex. 1 at 2).

On October 28, 2009, the United States Parole Commission ("USPC" or "Commission") conducted an initial parole hearing for the Petitioner in anticipation of his upcoming eligibility for release. (Doc. 11-2, Exs. 2, 3). The hearing examiner informed the Petitioner that he would recommend the Petitioner's case be continued until the Commission could obtain a copy of the Petitioner's offense report. (Id.) According to the hearing

---

[1] Having reviewed the record, *de novo*, we largely adopt the magistrate judge's recitation of the background facts.

summary, the hearing examiner was able to obtain the police report and Grand Jury Indictment for the Petitioner's assault conviction. (Doc. 11-2, Exs. 3-5).

The hearing examiner summarized the facts surrounding the Petitioner's conviction in the hearing summary. (Doc. 11-2, Ex. 3). The hearing examiner noted that the Petitioner is a reputed member of the Stanton Terrace Crew, a rival of the Parkland Crew. (Id.) The hearing examiner stated that the Petitioner's indictment indicates that between March 20, 1995 and December 13, 1995, members of the Stanton Terrace Crew, including the Petitioner, conspired to murder members of the Parkland Crew, who were viewed as competitor crack cocaine dealers, in order to seek revenge for the killing of a former member of the Stanton Terrace Crew. (Doc. 11-2, Exs. 3, 5).

The two crews were involved in a feud and police responded to shootings on three separate occasions. (Doc. 11-2, Ex. 3-5). On May 11, 1995, members of the Stanton Terrace Crew, including the Petitioner, went to the Savannah Terrace to murder James Dawkins, an associate of the Parkland Crew. (Id.) This shooting resulted in three bystanders, two women and a four year old child, being shot and wounded. (Id.) On May 13, 1995, members of the Stanton Terrace Crew shot and killed William Zimmerman, a member of the Parkland Crew. (Id.) On May 14, 1995, members of the Stanton Terrace Crew shot and killed Michael Thompson during an attempt to kill members and associates of the Parkland Crew. (Id.)

The Petitioner was indicted on twelve counts and subsequently pled guilty to three counts of Aggravated Assault. (Doc. 11-2, Ex. 3 at 4-5). According to the hearing examiner, during the hearing on October 28, 2009 the Petitioner admitted his involvement in the May 11, 1995 shooting,

2

stating only that three people were shot and that no one was killed. (Doc. 11-2, Ex. 3 at 5-6). The hearing examiner noted that the Petitioner's statements at the parole hearing were different from the information in the official version of events. (Doc. 11-2, Ex. 3 at 5-6). On December 14, 2009, the Petitioner was informed that his case was remanded for a new hearing to consider information contained in the police report dated March 23, 1998 and the Grand Jury indictment. (Doc. 11-2, Exs. 4, 5).

The second hearing was conducted by Hearing Examiner Joseph Pacholski ("Pacholski") on January 28, 2010. (Doc. 11-2, Ex. 7). According to Pacholski's hearing summary the Petitioner admitted he was present for the two murders alleged in the indictment, and for the shooting of the two women and child. (Id.) According to Pacholski's summary of the prisoner's statement, "[t]he subject indicated that he was present for the Murders and he was there for the shooting of the two females and the 4 year old child. . . . The subject agreed that the information supplied at the [initial] hearing was accurate for the questions that were asked but he is further identifying that he was present when these things occurred but he was not an active participant. It was only because of the conspiracy did he become an active participant [sic]." (Id. at 1). In evaluating the Petitioner, Pacholski concluded that, "[d]ue to the subject's own admission of being present at the time of the shooting of the child and the two women this examiner coupled with the murders from before [sic] believes that the subject needs a victim course to be ready for parole." (Id. at 2). Pacholski recommended that parole be denied. (Id.)

The Executive Reviewer, S. Husk, concurred with Hearing Examiner Pacholski. The executive reviewer commented that, although the Petitioner presented a sentencing transcript indicating that Petitioner was not alleged to have been present at the two murders, Pacholski had

3

indicated that Petitioner admitted his presence at the murders to him. The Executive Reviewer stated "I believe there is sufficient evidence to conclude that the instant offense involved exceptional cruelty to the victims and reflects ongoing criminal behavior. Specifically, on 5/11/95, McIntyre participated in a shooting in which there were innocent bystanders that were struck with bullets including a four year old boy. Furthermore, the purpose of the shooting was to kill a rival crew member. McIntyre also admitted to being present during two other shootings that resulted in the death of the victims. Those murders were also carried out in furtherance of the illegal activity of the Stanton Street Crew." (Id. at 4).

In its March 13, 2010 Notice of Action denying Petitioner parole, the Commission provided its statement of reasons for departing from the guidelines. (Doc. 11-2, Ex. 8). The Commission's statement of reasons incorporates the executive reviewer's comments, verbatim. The Commission's statement of reasons is as follows:

> The Commission has applied the D.C. Board of Parole's 1987 guidelines to the initial parole decision in your case. You have a total point score of 2 under the guidelines for D.C. Code offenders. The guidelines indicate that parole should be granted at this time. However a departure from the guidelines at this consideration is found warranted because the Commission finds there is a reasonable probability that you would not obey the law if released and that your release would endanger the public. You are a more serious parole risk than shown by your point score because your offense conduct involved ongoing criminal behavior involving violence, drug distribution and possession of weapons. Specifically, you were a member of the Stanton Street Crew engaging in drug distribution activities and were present during three shootings that were carried out in furtherance of the illegal activities of the Crew. Specifically you were involved in a shooting on 5/11/95 wherein a member of a rival Crew was the intended victim but,

> in fact, three innocent victims were struck including an especially vulnerable victim (a four year old child). Within a few days of that shooting you were present when two other men were murdered also in furtherance of the illegal activities of the Stanton Street Crew. You were involved in drug distribution activities for nearly 3 years prior to these shootings and the intent of the Stanton Street Crew was to eliminate rival crew members specifically members of the Parkland Crew. The extent of your ongoing criminal activity is evidenced by material recovered from your residence at the time of your arrest in December of 1995 which included a sawed-off shotgun, ammunition of various calibers, two digital scales and a handwritten diary describing several violent crimes. In addition, a videotape was recovered dated January of 1994 wherein you were demonstrating how to use a sawed off shotgun and your 4 year old son was seen mimicking use of a gun. The Commission believes all of this evidence of your ongoing commitment to a violent criminal lifestyle while in the community. The Commission recognizes the positive prison adjustment that you have made. However, your ongoing criminal behavior in the community that included participating in shootings that furthered your drug distribution activities indicate to the Commission that you remain a risk to release on parole at this time.

(Id.) The decision of the Commission was not administratively appealable. (Id.) By way of a April 30, 2010 letter, Petitioner requested that the Commission reopen his case, however the Commission determined that reopening was not warranted. (Doc. 11-2, Exs. 9, 10).

On August 19, 2010, the Petitioner filed his petition for a writ of habeas corpus, *pro se*, challenging the Commission's departure from the guidelines for District of Columbia offenders. (Doc. 1). On September 30, 2010, Respondent Warden Ebbert filed his response. (Doc. 11-2). Magistrate Judge Thomas M. Blewitt filed a report and recommendation on December 22, 2010. Petitioner filed his objections to the report and

recommendation on January 10, 2011. (Doc. 15). On February 23, 2011 the court ordered and received an audio recording of Petitioner's January 28, 2010 remand hearing before Hearing Examiner Pacholski. Upon the court's review of this recording, the matter is now ripe for disposition.

**II. JURISDICTION**

Because this case is brought under 28 U.S.C. §§ 2241 ("Section 2241"), the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."). Section 2241 "confers jurisdiction on district courts to issue writs of habeas corpus in response to a petition from a state or federal prisoner who 'is in custody in violation of the Constitution or laws or treaties of the United States.'" Coady v. Vaughn, 251 F.3d 480, 484 (3d Cir. 2001). The federal habeas statute also requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng v. Cook, 490 U.S. 488, 490-91 (1989)).

Section 2241, unlike other federal habeas statutes, "confers habeas jurisdiction to hear the petition of a federal prisoner who is challenging not the validity but the execution of his sentence." Coady, 251 F.3d at 485. (quoting 28 U.S.C. §§ 2241(a) and (c)(3)). Although the Third Circuit Court of Appeals has yet to clearly define the meaning of "execution" in this context, it has cited approvingly holdings from other circuits finding that a Section 2241 motion properly challenges "'such matters as the administration of parole, computation of a prisoner's sentence by prison officials, prison disciplinary actions, prison transfers, type of detention and prison conditions.'" Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242 (3d Cir. 2005) (quoting Jimian v. Nash, 245 F.3d 144, 147 (2d Cir. 2001)).

6

The Third Circuit has also found Section 2241 to be the appropriate means to challenge a decision to exclude an inmate from release to an RRC. See Woodall, 432 F.3d at 243-44.

### III. STANDARD OF REVIEW

In disposing of objections to a magistrate judge's report and recommendation, the district court must make a *de novo* determination of those portions of the report to which objections are made. 28 U.S.C. § 636 (b)(1)(C); see also Henderson v. Carlson, 812 F.2d 874, 877 (3d Cir. 1987). This court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The district court judge may also receive further evidence or recommit the matter to the magistrate judge with instructions. Id.

A *pro se* pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A habeas petition and any supporting submissions filed *pro se* must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney Gen., 878 F.2d 714, 721-22 (3d Cir. 1989). However, a federal district court can dismiss a habeas petition if it appears from the face of the petition that the petitioner is not entitled to relief. See Lonchar v. Thomas, 517 U.S. 314, 320 (1996); Siers v. Ryan, 773 F.2d 37, 45 (3d Cir. 1985), cert. denied, 490 U.S. 1025 (1989). See also 28 U.S.C. §§ 2243, 2255.

### IV. DISCUSSION

The Petitioner challenges the Commission's departure from the guidelines. He argues that the departure violates his rights to Due Process and Equal Protection, and that the Commission did not have a rational basis for its decision. The magistrate judge, finding a rational basis for the

decision of the Commission, recommends that the petition for a writ of habeas corpus be denied. The magistrate judge explains that the Commission has discretion to depart from the guidelines, so long as it specifies its reasons in writing.

The Petitioner raises various objections. The Petitioner's chief objection to the report and recommendation is that there is no rational basis for the Commission's departure because the record before the hearing examiner and the commission did not establish his alleged ongoing criminal behavior.

Petitioner is considered for parole under the D.C. parole statute, which states:[2]

> Whenever it shall appear to the United States Parole Commission ("Commission") that there is a reasonable probability that a prisoner will live and remain at liberty without violating the law, that his or her release is not incompatible with the welfare of society, and that he or she has served the minimum sentence imposed or the prescribed portion of his or her sentence, as the case may be, the Commission may authorize his or her release on parole upon such terms and conditions as the Commission shall from time to time prescribe.

D.C. Code § 24-404(a) (2010) (previously codified at § 24-204 (1981)).

---

[2] The Petitioner's parole is governed by regulations originally adopted by the D.C. Parole Board. "In 1998, . . . jurisdiction over parole decisions for D.C. offenders was transferred from the Board to the Commission through the National Capital Revitalization and Self-Government Improvement Act of 1997 ("Revitalization Act"), Pub. L. No. 105-33, § 11231(a)(1), 111 Stat. 712, 745 (effective August 5, 1998); D.C. Code § 24-131 (2001). The Revitalization Act required the Commission to follow D.C. parole law and regulations, but it also gave the Commission 'exclusive authority to amend or supplement any regulation interpreting or implementing' D.C. parole laws. See D.C. Code § 24-131 (formerly § 24-1231)." Puifory v. Reilly, No. 3:08-CV-982, 2009 WL 839354, *2 (M.D. Pa. Mar. 30, 2009).

8

"The regulations establish a scoring system to guide the Board's parole decisions. § 204.1. Each parole candidate is assigned a "Salient Factor Score" to assist in determining the risk of releasing the prisoner. As the regulations put it, the 'SFS' serves as 'one of the factors used in calculating parole eligibility pursuant to the provisions of this section.' § 204.2." Ellis v. District of Columbia, 84 F.3d 1413, 1415 (D.C. Cir. 1996) (and further describing method of calculating SFS and risk category at 1416).

The regulations, however, proceed to state:

> The Board may, in unusual circumstances, waive the [Salient Factor Score] and the pre and post incarceration factors set forth in this chapter to grant or deny parole to a parole candidate. In that case, the Board shall specify in writing those factors which it used to depart from the strict application of the provisions of this chapter.

D.C. Mun. Regs. tit. 28 § 204.22 (1987). Because of this language, the scoring system set forth in the USPC's regulations has been determined to be "merely a guide, not a 'rigid formula,' and not a constraint on the discretion conferred upon the [Commission] by the parole statute." Ellis v. District of Columbia, 84 F.3d 1413, 1419 (D.C. Cir. 1996) (quoting and adopting the reasoning of McRae v. Hyman, 667 A.2d 1356, 1357 (D.C. 1995) (Parole Board has substantial discretion to deny parole, despite total point score)).

"The appropriate standard of review of the Commission's findings of fact is not whether the Commission's decision is supported by the preponderance of the evidence, or even by substantial evidence; the inquiry is only whether there is a rational basis in the record for the Commission's conclusions embodied in its statement of reasons." Furnari v. Warden, Allenwood Federal Correctional Inst., 218 F.3d 250, 254 (3d Cir. 2000) (internal quotations and brackets omitted). This rational basis

9

review of the Parole Commission's findings of fact is geared towards ensuring that the Commission's "decision is not arbitrary and capricious, nor based on impermissible considerations." Id. (quoting Zannino v. Arnold, 531 F.2d 687, 691 (3d Cir. 1976)). "To this end, the Commission may not base its judgment as to parole on an inaccurate factual predicate." Furnari, 218 F.3d at 254 (quotation and citation omitted). Parole hearings are not adversarial, and the rules of evidence, such as the rule against hearsay evidence, do not apply. Id.

In this opinion we address what we consider to be the Petitioner's strongest objection to the report and recommendation; that Hearing Examiner Pacholski recommended denying parole, at least in part, on a purported admission by the Petitioner that Petitioner was present for the murders of William Zimmerman and Michael Thompson. Petitioner denies making such an admission and he provided Pacholski with a portion of Petitioner's sentencing transcript in which the prosecutor specifically indicated to the sentencing court that Petitioner was not alleged to have been at the scene of the murders. Thus, according to the Petitioner, if no admission of presence was actually made, the only rational conclusion that Pacholski could have made from the record would have been that Petitioner was not present at the two murders.

Petitioner cites Misasi v. U.S. Parole Com'n, 835 F.2d 754, 758 (10th Cir. 1987), where the United States Court of Appeals for the Tenth Circuit held that the Parole Commission did not state a rationale basis for setting parole outside the presumptive parole guidelines of 28 C.F.R. § 2.20 because the Commission's stated reasons were either (1) factually incorrect or (2) not supported by the record. There, the hearing examiner found that "'It is substantiated by the U.S. Attorney's report that subject [Misasi] was the largest illegal distributor of controlled substances in the

Western District of Missouri and additionally, subject [Misasi] accepted stolen goods in exchange for controlled substances.'" Id. at 756. The district court denied Misasi's petition for a writ of habeas corpus and the Tenth Circuit reversed. The Tenth Circuit determined that the label "largest illegal distributor" was too vague to satisfy the Commission's burden of providing specific facts upon the record justifying departure. As to the second reason, the circuit court found that Misasi only thought the goods were stolen, although in fact they were not, and thus the Commission's reason was factually incorrect.[3] Thus, the court reversed.

    We are persuaded by the Tenth Circuit's analysis that there is no rational basis for the Commission's departure from parole guidelines where the stated reasons are factually incorrect. That principle is relevant to this case because, upon the court's request, the Respondent provided an audio recording of the Petitioner's January 28, 2010 remand parole hearing before Hearing Examiner Pacholski and the recording flatly contradicts Pacholski's indication that Petitioner admitted his presence at the two murders in question. (Audio Recording of Parole Hearing of Jan. 28, 2010, Ct. Ex. 1). As Petitioner protested in his petition for a writ of habeas corpus, brief in support of his petition, and objections to the report and recommendation, at the January 28, 2010 hearing the Petitioner denied being present at the murders. The Petitioner explained to Pacholski that

---

    [3] The circuit court noted that, technically, receiving goods which are not stolen– though the subject may receive them in the belief that they are stolen– is not a crime. Misasi, 835 F.2d at 758. The circuit court proceeded to explain that perhaps the Commission would have departed from the guidelines based upon the fact that Misasi believed he was accepting stolen goods, but the court ultimately declined to make that assumption for the Commission and refused to find a rational basis for the Commission's decision. As set forth below, we reason similarly.

he was only initially charged with conspiracy to commit the two murders because the juvenile arrested for the murders was associated with the Petitioner. The Petitioner clearly stated he was not present for the murders. The denial was made without ambiguity at two points during the hearing and was never contradicted. The Petitioner did admit membership in the Stanton Terrace Crew.

Hearing Examiner Pacholski's recommendation that the Commission deny parole to the Petitioner relied on the Petitioner's non-existent admission, stating that "[d]ue to the subject's own admission of being present at the time of the shooting of the child and the two women this examiner coupled with the murders from before [sic] believes that the subject needs a victim course to be ready for parole." (Doc. 11-2, Ex. 7 at 2). Executive Reviewer S. Husk, in turn, discounted the sentencing transcript indicating that Petitioner had not been present at the murders in favor of Pacholski's counterfactual statement that Petitioner had admitted his presence. (Id. at 3 - 4). The Executive Reviewer adopted Pacholski's recommendation. Finally, the Commission completed the administrative chain of reliance upon Petitioner's purported presence. The Commission's statement of reasons is replete with references to the Petitioner's "admission" of presence:

> Specifically, you were a member of the Stanton Street Crew engaging in drug distribution activities and were <u>present during three shootings that were carried out in furtherance of the illegal activities of the Crew</u>. . . . Within a few days of that shooting <u>you were present when two other men were murdered also in furtherance of the illegal activities of the Stanton Street Crew</u>. . . . [Y]our ongoing <u>criminal behavior in the community that included participating in shootings that furthered your drug distribution activities</u> indicate to the Commission that you remain a risk to release on parole at this time.

(March 13, 2010 Notice of Action (Doc. 11-2-2, Ex. 8) (emphasis added)).

Thus, at each stage of the parole hearing and review process, the Petitioner's supposed admission of presence was relied upon.  Given that the actual record, including the recording of the January 28, 2010, cannot support a finding that the Petitioner was present at the murders of William Zimmerman and Michael Thompson, we do not find a rational basis for the Commission's decision.  See Misasi, 835 F.2d at 758 ("the Commission may not base its judgment as to parole on an inaccurate factual predicate.").  Accordingly, the petition for a writ of habeas corpus will be granted.

We pause to note that, ultimately, the Commission may determine that reasons other than the Petitioner's presence at the murders compel departure from the guidelines– such as Petitioner's involvement in the May 11, 1995 shooting, his membership in a street crew, the artifacts of drug distribution found in his home, or the Petitioner's diary indicating his violence.  Had the Commission indicated in its statement of reasons that it would have departed from the guidelines for any or each of these other stated reasons, independent from the Petitioner's presence at the murders, the court might have found that decision to have had a rational basis.  However, insofar as Hearing Examiner Pacholski indicated that he recommended denial of parole based on the combination of the Petitioner's involvement May 11, 1995 shooting and the admission of presence at the two murders, and that the Executive Reviewer and Commission directly relied on the reported admission, we are not prepared to assume whether a departure would have been made.  A determination by this court that the remaining uncontested reasons underlying the Commission's denial would constitute a rational basis would be no less a usurpation of the Commission's authority to apply the guidelines to D.C. offenders than our decision here that no rational basis exists.  Accordingly, we find that the

13

appropriate course of action is to remand the Petitioner to the Commission for further appropriate consideration in light of the fact that the record supports no finding that the Petitioner was present at either murder.

**V. CONCLUSION**

    For the reasons stated above, the court will decline to adopt the recommendation that the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 be denied. An appropriate order follows.[4]

---

[4] On March 4, 2011, the Petitioner filed a motion (Doc. 20) requesting that a copy of the audio recording of Petitioner's January 28, 2010 remand hearing before Hearing Examiner Pacholski. Because we grant the relief that the Petitioner requests, the motion will be denied as moot.

14

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARREN MCINTYRE, | : | No. 3:10cv1739 |
| Petitioner | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| WARDEN D. EBBERT | : | |
| Respondent | : | |

## ORDER

**AND NOW**, to wit, this __7th__ day of March 2011, upon consideration of the Petitioner Darren McIntyre' objections (Doc. 15) to Magistrate Judge Thomas M. Blewitt's report and recommendation, it is HEREBY **ORDERED** as follows:

1. The objections (Doc. 15) to the report and recommendation are **SUSTAINED**,

2. The report and recommendation (Doc. 14) is **NOT ADOPTED**,

3. The petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) is **GRANTED**,

4. The motion (Doc. 20) requesting a copy of the audio recording of Petitioner's January 28, 2010 remand hearing before Hearing Examiner Pacholski is **DENIED** as moot,

5. The Petitioner is remanded to the Commission for further appropriate consideration in light of the fact that the record supports no finding that the Petitioner was present at either murder.

The Clerk of Court is directed to **CLOSE** this case.

**BY THE COURT:**

s/ James M. Munley

**JUDGE JAMES M. MUNLEY**
**United States District Court**

15